THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY WAYNE FREEMAN, Defendant-Appellant.

Third District   No. 3—90—0650

Opinion filed September 30, 1991.

Kim L. Kelley, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Judith Z. Kelly, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Terry Wayne Freeman was tried in a bench trial and convicted of the offense of unlawful use of weapons. He was sentenced to one year of probation. Defendant appeals from his conviction, challenging the trial court's ruling on his motion to suppress and the court's rejection of his defense theory that the weapon in question was in a broken-down state. We affirm.

Prior to the trial of this cause, the court heard defendant's oral motion to suppress evidence against him based on an allegedly illegal search. According to the State's evidence, the Peoria police department received a call around 1:30 a.m. on October 25, 1989, complaining of a prowler on the property of Dallas Dishman. Officer Gerald Ulrich responded to the call and interviewed Dishman and his son at the Dishman residence. Dishman described the suspect's clothing and

reported that the suspect had identified himself as "Freeman" before climbing over the fence to leave Dishman's yard. Ulrich searched the area and found defendant wearing clothing as described by Dishman within two blocks of Dishman's home. At first Ulrich did not recognize defendant, but after asking his name, Ulrich did recognize defendant as Terry Freeman. Ulrich testified that he knew from prior information that defendant was reputed to carry a gun. Ulrich said that after he told defendant to stop, he confronted him and conducted a pat-down search for Ulrich's personal safety. The search revealed a loaded .22 caliber Jennings semi-automatic pistol in defendant's inside jacket pocket. The gun appeared to Ulrich to be in working condition. The officer first removed the magazine and then the rear slide to remove rounds in the chamber. He then pocketed the gun until he returned to his squad car to run a check to determine whether the weapon was stolen. It was not. Ulrich later bagged, tagged and stored the gun in the department's property room for future evidentiary purposes.

Defendant testified on his own behalf at the hearing to suppress. He said that he recognized Ulrich by sight and had been arrested by him for armed robbery more than a year before the instant arrest. He stated that he had been searched for weapons by Peoria police officers on two other occasions. Defendant also testified that on the night in question, when Dishman asked him for identity, defendant showed him a firearm owner's identification card. He further testified that it was at that point that Dishman yelled to his son to call the police.

Based on the foregoing evidence, the trial court ruled that Officer Ulrich had sufficient cause to stop and to search defendant and, accordingly, denied defendant's motion to suppress. When the trial resumed, defendant testified that he had the gun in his possession, but that it was disassembled into two pieces with the slide mechanism separate from the rest of the gun and that it was, as such, inoperable when Ulrich removed it from defendant's pocket. Defendant demonstrated to the court how the gun could be disassembled and put back together. He further stated that he thought a 10-year-old child could disassemble and reassemble the pistol.

The State called Ulrich in rebuttal. He testified that the gun was in one piece when he removed it from defendant and denied that he had to put it back together. Although Ulrich had experience with firearms and opined that the weapon would be relatively simple to take apart, he stated that he had never disassembled or worked with a Jennings semi-automatic pistol.

At the close of all evidence and arguments of counsel, the court found that the State had borne its burden of proof for all elements of the offense charged and entered a finding of guilty. Defendant was convicted and subsequently sentenced, as aforesaid.

In this appeal, defendant contends that Officer Ulrich's stop and search of defendant's person pursuant to sections 107—14 and 108—1.01 of the Illinois Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, pars. 107—14, 108—1.01) were illegal because Ulrich failed to identify himself first as a police officer and because Ulrich had no reasonable basis for believing he was in danger.

The law applicable here was succinctly stated in *People v. Fairman* (1989), 182 Ill. App. 3d 497, 499, 538 N.E.2d 227, 229:

> "On a motion to suppress evidence, the defendant has the burden to make a *prima facie* showing the evidence was obtained by an illegal search and seizure. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898, 899.) A reviewing court will not reverse the trial court's finding on a motion to suppress evidence unless it is determined to be manifestly erroneous. (*People v. Holloway* (1981), 86 Ill. 2d 78, 426 N.E.2d 871; *People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.)"

The issue on appeal is whether the trial court erred in ruling that evidence seized as a result of Officer Ulrich's investigation was not the fruit of an illegal stop. As in *Fairman*, the State contends that Ulrich conducted a reasonable investigatory stop pursuant to *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868, and the Illinois codification of that case by section 107—14 of the Code of Criminal Procedure of 1963. As in *Fairman*, we agree.

Section 107—14 provides in relevant part as follows:

> "A peace officer, after having identified himself as a peace officer, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit or has committed an offense as defined in Section 102—15 of this Code ***." Ill. Rev. Stat. 1989, ch. 38, par. 107—14.

■ Initially we reject defendant's contention that Officer Ulrich had no basis for suspecting that defendant had committed an offense. Ulrich personally interviewed Dallas Dishman at Dishman's home before he searched the area. From the information gleaned at this interview and by the match of defendant's clothing to that described by Dishman, his direction of travel as reported by Dishman and his proximity to the property where Dishman reported having seen the prowler and the lateness of the hour, together with Ulrich's knowl-

edge of defendant's reputation for carrying a gun once he encountered defendant and recognized him, Ulrich had sufficient, articulable facts from which to reasonably believe that defendant was the person described by Dishman and that he may have been carrying a concealed weapon or otherwise involved in criminal activity. There is no requirement, statutory or otherwise, that the officer conducting a stop-and-frisk specify a particular offense, so long as the officer reasonably may infer that a violation of any penal statute in Illinois has been or may be committed by the person detained. See Ill. Rev. Stat. 1989, ch. 38, pars. 102—15, 107—14.

◼ Defendant's further contention that Ulrich's conduct in stopping him violated this section of the Code because he failed to identify himself before conducting the search is not well-taken. Defendant relies on *People v. Vollrath* (1981), 95 Ill. App. 3d 866, 420 N.E.2d 760, for this aspect of his argument. In *Vollrath* we affirmed the trial court's grant of defendant's motion to suppress a switchblade knife recovered from defendant during a stop-and-frisk. The circumstances in *Vollrath*, unlike here, demonstrated that the officer's stop was unreasonable. In *Vollrath*, the officer approached defendant from behind and immediately frisked him without any prior communication. Under such circumstances, the defendant would have no way of knowing that he is not being victimized by the person conducting the search. Such a search violates the defendant's right to be free from unreasonable searches.

By contrast, in this case, Ulrich, who was known by defendant from his prior contact with the police, told him to stop. Defendant complied. Then, Ulrich approached him and immediately conducted the frisk for weapons. Clearly, the facts here support the trial court's finding that Ulrich's stop was reasonable and in compliance with section 107—14. The section does not require that an officer formally introduce himself or orally announce that he is an officer of the peace. It requires only that the officer identify himself. This may be accomplished, as it was here, simply by visual recognition.

◼ Similarly, we reject defendant's argument that Officer Ulrich's pat-down search violated section 108—1.01 of the Code. That section provides:

"When a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code and reasonably suspects that he or another is in danger of attack, he may search the person for weapons. If the officer discovers a weapon, he may take it until the completion of the questioning, at which time he shall either return the weapon, if lawfully pos-

sessed, or arrest the person so questioned." (Ill. Rev. Stat. 1989, ch. 38, par. 108—1.01.)

Defendant seems to suggest that there was no reasonable justification for Ulrich to fear for his safety since defendant had not displayed a weapon to the complaining witness and Ulrich had back-up assistance from another officer, Officer Needham, before Ulrich conducted the pat-down. These facts do not undermine the fact that Ulrich had knowledge through official police channels that defendant had a reputation for carrying weapons. Such knowledge, coupled with the attending circumstances of the evening in question, was sufficient to place a reasonably prudent person in fear for his personal safety and justify a protective frisk. We hold, accordingly, that the trial court's ruling denying defendant's motion to suppress was not contrary to the manifest weight of the evidence.

■ Lastly, defendant contends that the trial court erred in crediting the police officers' testimony over defendant's on the question of whether the gun was in a broken-down state when it was removed from defendant's person. The test on review to a challenge to the sufficiency of the evidence is as stated in *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277. The reviewing court must view all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could find the elements of the offense beyond a reasonable doubt.

We have carefully reviewed the transcript of defendant's trial and find that the elements of the unlawful use of weapons charge were adequately proved. The trial court determined that minor discrepancies in the testimony of Ulrich and Needham did not destroy their credibility. That determination is entitled to deference on review. It is apparent that the officers' testimony was not rehearsed and that some insignificant details were not recalled in identical fashion by the two officers. However, the question about the state of the gun was not a matter about which there was any equivocation by the State's witnesses. Under the circumstances, the court was not required to believe defendant's testimony that the gun was in two pieces. Suffice it to say, the State met the standard of proof to the trial court's satisfaction, and we find under the appropriate standard that defendant's conviction should be sustained on review.

The judgment of the circuit court of Peoria County is affirmed.

Affirmed.

STOUDER, P.J., and HAASE, J., concur.