SECOND DIVISION

May 9, 2000

No. 1-99-1660

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County

)

v. ) 

) Honorable

EDWARD CARLSON, ) Nicholas Pomaro and

) John J. Scotillo,

Defendant-Appellant. ) Judges Presiding

JUSTICE McNULTY delivered the opinion of the court:

In this case we must determine whether the prosecution presented sufficient evidence to justify the seizure of the defendant.  We find that a recent decision of the United States Supreme Court controls the resolution of this issue.  Following 
Florida v. J.L.
, ____ U.S. ____, ____ L. Ed. 2d ____, 120 S. Ct. 1375 (2000), we hold that the evidence derived from the seizure must be suppressed and the conviction reversed.

Sergeant Brad Hollister arrested Edward Carlson around midnight on October 11, 1998, charging him with unlawful use of a weapon.  At the hearing on defendant's motion to quash the arrest, Hollister said that "[t]here was a call to our 911 dispatch of a possible suicidal subject on the pay phone" at a specified location.  Hollister added that the dispatcher briefly described the subject, named Edward, and said he might have a gun.  When Hollister arrived at the specified location, he saw defendant talking on a pay phone.  Hollister testified:

"I identified myself, got out of my car.  I asked the subject if his name was Edward.  He replied yes.  I had my weapon pointed at him for my safety for the possibility he had a weapon.  And I asked him to lie prone on the ground."

Hollister then asked if defendant had a weapon.  Defendant said he did not have one on him, but he had one in his car.  Backup officers took defendant's keys and found a gun under the front seat of the car the keys opened.

Defendant's testimony effectively corroborated Hollister's testimony.  The court found both witnesses credible and held that Hollister acted reasonably under the circumstances.  On that basis the court denied the motion to quash the arrest and suppress evidence seized at the time of the arrest.

At the bench trial Hollister added that the dispatcher said the subject "was talking to his girlfriend" on the payphone.  The court found defendant guilty of unlawful use of a weapon and sentenced him to 12 months of conditional discharge.

After oral argument on appeal, the Supreme Court decided 
J.L.
.  We asked the parties to comment on the effect of that decision on this case.  In 
J.L.
 someone called the police and told them a young black man, at a specified location and wearing a plaid shirt, had a gun.  Officers went to the scene where they found a young black man wearing a plaid shirt.  Although the man made no threatening or suspicious movements, police frisked him and seized a gun.  The prosecution charged him with unlawful possession of a firearm.  The trial court granted the defendant's motion to quash.  The Supreme Court affirmed, finding that the evidence did not show sufficient indicia of reliability to justify the stop and frisk.  The Court explained:

"[T]he officers' suspicion that J.L. was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller. ***

***

***  The anonymous call *** provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility. That the allegation about the gun turned out to be correct does not suggest that the officers, prior to the frisks, had a reasonable basis for suspecting [the defendant] of engaging in unlawful conduct ***. ***

***

An accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."  
J.L.
, ____ U.S. at ____, ____ L. Ed. 2d at ____, 120 S. Ct. at 1378-79.

The concurrence emphasized that the "record [did] not show whether some notation or other documentation of the call was made either by a voice recording or tracing the call to a telephone number."  
J.L.
, ____ U.S. at ____, ____ L. Ed. 2d at ____, 120 S. Ct. at 1381 (Kennedy, J., concurring).

Here, too, the prosecution failed to present evidence of sufficient indicia of reliability to justify the stop and frisk.  The record includes no evidence that the police knew the identity of the caller or whether the police could find the caller's phone number or address. 

The prosecution contends that the call was not anonymous because Hollister reported that the dispatcher said the defendant's girlfriend called the station.  The argument mischaracterizes the record.  Hollister said nothing at all about the caller or even whether the dispatcher told him who called.  Hollister said only that the dispatcher reported that the subject was talking to his girlfriend on the pay phone.  Even if we assume the dispatcher told Hollister the truth and the caller had reason to say defendant  was talking to his girlfriend, the evidence permits the inference that a roommate or any other person who knew the putative girlfriend could have made the call.  The evidence does not show the caller could in any way be found again or held accountable if the information proved to be false.  In this case, as in 
J.L.
, the prosecution did not present evidence of tracing the call or a tape  recording of the call or any other evidence to distinguish the call here from an anonymous tip.

The prosecution also argues that, in this case, unlike 
J.L.
, the police did not seize defendant until they confirmed that he had a gun.

"[A] seizure of a person *** occurs the moment a person's freedom to walk away from a policeman is restrained, even though a restraint falls short of an arrest. [Citation.]  Restraint can be deduced from a showing of actual or threatened force on the part of the police officer."  
People v. Mills
, 115 Ill. App. 3d 809, 813, 450 N.E.2d 935 (1983).

Hollister made a threat of force by drawing his gun as he first approached defendant.  He asked only if defendant's name was Edward before ordering defendant to lie on the ground.  At this point the State had seized Edward, at least to the extent of stopping him for questioning and searching him for weapons.  As in 
J.L.
, defendant here was not doing or saying anything suspicious or threatening.  Based solely on the information from the dispatcher, Hollister pointed a gun at defendant and ordered him to lie on the ground.  Under 
J.L.
, the evidence cannot justify the seizure.  See also 
People v. Lawson
, 298 Ill. App. 3d 997, 700 N.E.2d 125 (1998).

The prosecution presented neither the tape nor the dispatcher nor any other admissible evidence to prove that an accountable person called the police.  The anonymous tip lacked sufficient indicia of reliability to justify the seizure of defendant.  The trial court should have quashed the stop and suppressed any evidence then obtained.  Without the evidence obtained following the investigatory stop, the prosecution had no proof that defendant used a weapon unlawfully.  Accordingly, the judgment of the trial court must be reversed.

Reversed.

COUSINS, P.J., and McBRIDE, J., concur.