*In re* A.V., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Anthony V., Respondent-Appellant).

First District (5th Division)   No. 1—00—3834

Opinion filed December 6, 2002.

Rita A. Fry, Public Defender, of Chicago (Cari J. Resnick, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), for the People.

JUSTICE REID delivered the opinion of the court:

Following a hearing, minor respondent Anthony V. was found delinquent for aggravated unlawful use of a weapon. On appeal, respondent contends the trial court erred by determining that the police conducted a lawful stop and search and by denying his motion to quash arrest and suppress evidence.

Respondent's motion to quash arrest and suppress evidence was heard at trial. Chicago police officer Navakovic, who was the sole witness to testify, stated that in August 2000 he and his partner were patrolling a park in Chicago in a marked police car. In the late afternoon of the day in question, a teenager approached the police car and told the officers that there was "a kid" in the park who was showing a gun to other young people. The witness gave the police a description of the suspect and indicated the direction where the suspect went. The police did not get the witness's name. About five or six other "kids" also approached the officers and told them the same thing. Officer Navakovic subsequently prepared a report about the incident in which he mentioned only the first witness who approached them with information. He did not file any supplemental reports.

Officer Navakovic further testified that after receiving this information, he drove to another location about 200 feet away. The officer saw respondent, who matched the description given and was at the designated location on May Street. At that time, respondent was not doing anything illegal. Officer Navakovic approached respondent and asked him if he had anything "on" him, and respondent answered that he did not. The officer then performed a protective pat-down search of respondent and felt an object with a handle in respondent's rear pocket. Officer Navakovic recovered the object, which was a fully loaded .38-caliber gun.

On cross-examination, Officer Navakovic stated that the subject was described by the first witness as a husky Hispanic 16-year-old youth, wearing black jeans, a blue shirt and white gym shoes, and carrying a gun. That witness told the police that the suspect was showing a gun to "all the kids" in the park and pointed to the southwest, toward May Street, when he showed where the suspect went. Officer Navakovic encountered the other five or six witnesses when he was driving in that direction. Those witnesses pointed toward respondent and also said that respondent was "showing off" a gun. The officer saw respondent within about one minute and recognized him as matching the description given by the witnesses and being in the loca-

tion given. Officer Navakovic stated that he performed the pat-down search for his own protection.

On redirect examination, Officer Navakovic stated that he could not remember if the first witness told him that the suspect's name was Antonio, but he did give a name that began with an "A." The parties stipulated that the police report did not contain the word "husky" or state whether respondent was in view when the first witness flagged down the police.

On re-cross-examination, Officer Navakovic testified that no one in the area other than respondent matched the description given by the witnesses.

In closing argument, defense counsel attempted to discredit the numerous witnesses mentioned by Officer Navakovic as "nebulous" because the officer did not get their names and did not mention them in the police report. Counsel characterized the first witness as anonymous, arguing that he was not credible because his name was not known. He further argued that an anonymous tip was insufficient to justify the police stop of respondent, relying upon the United States Supreme Court's decision in *Florida v. J.L.*, 529 U.S. 266, 274, 146 L. Ed. 2d 254, 262, 120 S. Ct. 1375, 1380 (2000) (holding that where an anonymous tip of a person carrying a gun came from a telephone call to the police and the caller's identity and source of knowledge were unknown, the tip was not sufficient to justify the police stop and search of the person described because the tip lacked the moderate indicia of reliability).

In response, the State argued in closing that this case was distinguishable from *J.L.*, where the tip came from a telephone call and where the time frame of the information, as well as the identity and location of the informant, was unknown. The State pointed out that the tip here, unlike the one in *J.L.*, was reliable because the informant was at the scene rather than at a remote location, and the information was corroborated by other witnesses. The State mentioned the rationale in *J.L.* of preventing harassment resulting from police action on anonymous tips and argued that it did not apply in this case because the description was much more specific, and more importantly, if it proved to be inaccurate, the police could have easily returned to find the informants. The State cited this potential accountability of the informants as further indicia of the reliability of the information. Defense counsel replied that here, as in *J.L.*, the police did not independently observe respondent engaged in any illegal activity.

In ruling, the trial court relied upon the Supreme Court's discussion of the reasonableness of an official suspicion, which is to be measured by what the police knew before they conducted their search.

The court distinguished the facts of this case, stating that, here, the information came from several "live" informants (rather than it believed Officer Navakovic's suspicions) and found the search to be appropriate. The court then denied respondent's motion to quash arrest and suppress evidence.

The parties proceeded to trial and stipulated that Officer Navakovic would testify consistently with his hearing testimony. Officer Navakovic took the stand briefly and stated that respondent was located on a public way when he was stopped and that respondent was 16 years old. The trial court found respondent delinquent for aggravated unlawful use of a weapon and released him on home confinement and with a curfew. The court subsequently sentenced respondent to one year's probation with conditions.

On appeal, respondent essentially repeats the argument he made at the hearing to quash arrest and suppress evidence, contending that the stop and pat-down search violated his constitutional rights. He contends that neither the stop nor the pat-down search was reasonable, based upon *J.L.*, because the informant's name was not known. Respondent also challenges the credibility of the officer's testimony concerning the corroboration by other witnesses.

■ Undisputed facts in a motion to suppress are reviewed *de novo*, but the trial court's findings of fact and credibility determinations, and inferences drawn therefrom by the trial court and arresting officers, will be given due deference. *People v. Ross,* 317 Ill. App. 3d 26, 29 (2000). The trial court's determination of reasonable suspicion supporting the stop of a person for temporary questioning is reviewed *de novo. People v. Young,* 306 Ill. App. 3d 350, 353 (1999); see also *Terry v. Ohio,* 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

■ A brief investigatory stop of a person in a public place is justified when it is based on the police officer's reasonable inferences made from specific articulable facts. *Ross,* 317 Ill. App. 3d at 29; *Young,* 306 Ill. App. 3d at 353. The specific facts known to the police are examined to determine the reasonableness of the stop and whether a reasonable suspicion existed based on those facts. *Ross,* 317 Ill. App. 3d at 29.

■ This court has recently held, based on the decision in *J.L.,* that an anonymous tip received from a telephone call to an emergency dispatcher lacked sufficient indicia of reliability to justify the stop and frisk of the defendant. *People v. Carlson,* 313 Ill. App. 3d 447, 450 (2000). The indicia of reliability was lacking because no evidence was presented to show that the call could be traced or the caller found again and held accountable if the information proved to be false. *Carlson,* 313 Ill. App. 3d at 449.

■ In the instant case, the indicia of reliability of the information

received by Officer Navakovic was not lacking. Here, although their names were not known, the informants were not anonymous in the same sense as the callers in *J.L.* and *Carlson*. The informants here were identifiable because they approached the police and spoke to them in person. Furthermore, they were still in the park where the incident occurred when they spoke to the police. The information reported was timely, as shown when respondent was found and stopped within one minute. Therefore, where information was provided by eyewitnesses who were still at the scene of the incident, it was reasonable to infer that the information was reliable.

Moreover, unlike the caller-informants in *J.L.* and *Carlson*, the informants were physically present in this case and were not untraceable. As the trial court noted, the officers easily could have returned and found the informants had the information proved to be false. Finally, the information provided by the first informant was corroborated by five or six others who were at the scene. Despite respondent's assertion that such corroboration should be discredited, the trial court apparently believed Officer Navakovic's account, and the trial court's credibility determination will be given due deference. *Ross*, 317 Ill. App. 3d at 29. The information given to the police created a reasonable inference that criminal activity had occurred or was about to take place. Where the information was received from informants who could be found and held accountable, such information provided a reasonable basis for Officer Navakovic to conduct an investigatory stop of respondent. *Cf. Carlson*, 313 Ill. App. 3d at 449-50. Therefore, the trial court properly determined that the stop, which was based on a reasonable suspicion, was justified. *Ross*, 317 Ill. App. 3d at 30.

Once the stop was made, it was reasonable for Officer Navakovic to search respondent, despite respondent's denial that he was carrying anything illegal. *People v. Rivera*, 272 Ill. App. 3d 502, 505 (1995). The specific information that the police received was that respondent was carrying a gun. Under such circumstances, where there was a reasonable belief that a weapon was concealed, the protective pat-down search was appropriate. *Rivera*, 272 Ill. App. 3d at 505; see also *People v. Freeman*, 219 Ill. App. 3d 240, 245 (1991). Therefore, the trial court properly denied defendant's motion to quash arrest and suppress evidence.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GREIMAN and QUINN, JJ., concur.