THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DOMINGO MILLER, Defendant-Appellant.

First District (1st Division) No. 1—03—1708

Opinion filed February 7, 2005.

Michael J. Pelletier and Terry Louisa Campos, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Manny Magence, and William Blumthal, Jr., Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MALLEY delivered the opinion of the court:

Following a bench trial, defendant Domingo Miller was convicted of aggravated unlawful use of a weapon and unlawful use of a weapon by a felon, and was sentenced to 38 months in prison. The court also heard defendant's motion to quash arrest and suppress evidence simultaneously with his bench trial. On appeal, defendant contends that the trial court erred in denying his motion to suppress evidence because the police officer who recovered a gun from defendant lacked reasonable suspicion to stop and frisk him. For the reasons that follow, we affirm.

Chicago police officer Orlando Rodriguez testified that at approximately 4:03 p.m. on December 15, 2002, he and his partner, Officer Tanya Lazaro, were patrolling the area near North Avenue and Spaulding. The officers were stopped by an individual with whom neither officer was familiar. The individual told the officers that he observed a black male wearing dark clothing standing on the corner of Lemoyne and Spaulding displaying a handgun. The informant did not give any details as to the individual's height or weight. Rodriguez and Lazaro then drove to that area and saw defendant, a black male, standing on the southeast corner of Lemoyne and Spaulding. Rodriguez did not see a gun. Because defendant matched the description given by the individual, Rodriguez and Lazaro approached him to conduct a field interview, and defendant freely approached Rodriguez's car. Rodriguez then began to conduct a "protective pat-down" during which he felt an object inside defendant's waistband. According to Rodriguez, defendant was not free to leave at that time. Defendant broke free from Rodriguez and ran north on Spaulding. As defendant ran away, a gun fell from his waistband. Rodriguez recovered the gun, which was loaded with two rounds of ammunition, and pursued defendant. Defendant entered a second-floor apartment on West Lemoyne where Officer Rodriguez was "confronted by several angry women" who prevented Rodriguez from pursuing defendant.

Officer Lazaro recognized defendant from previous contact she had had with him. Officers Rodriguez and Lazaro returned to the station, where they recovered a photograph of defendant. From that photograph, Rodriguez recognized defendant as the man he had encountered. Rodriguez wrote a report of the incident in which he included that defendant's address was 4924 West Deming.

On January 8, 2003, Rodriguez and other officers went to 4924

West Deming and apprehended defendant. The officers, however, had neither a search nor an arrest warrant. Rodriguez testified he had previously been to defendant's home, but was unable to locate him. Defendant does not contest the propriety of this arrest on appeal.

The parties stipulated at trial that defendant had previously been convicted of delivery of cannabis.

The trial court denied defendant's motion to quash arrest and suppress evidence, concluding that Rodriguez's testimony indicated he had sufficient articulable facts from the informant to stop defendant pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). The court further found the pat-down of defendant was permissible under *Terry* because the informant told Rodriguez that defendant had a gun.

■ Defendant contends on appeal that the trial court erred in denying his motion to suppress because the information provided by the individual was uncorroborated and vague. Defendant asserts the information provided by the unknown person did not provide Officer Rodriguez with reasonable suspicion to either stop him or conduct a pat-down search. Defendant thus argues that the recovered gun must be suppressed as a fruit of an illegal stop.

The State initially responds that defendant has waived this issue for review because he failed to challenge the trial court's ruling on his motion to quash arrest and suppress evidence in his posttrial motion. Generally, when a defendant fails to challenge the trial court's ruling on such a motion in his or her posttrial motion, he or she waives that issue for purposes of appeal. *People v. Echols*, 282 Ill. App. 3d 185, 189-90 (1996); see also *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Because defendant's challenge to the trial court's ruling on his motion to quash arrest and suppress evidence is of constitutional dimension, we will review his argument on its merits. See *People v. Centeno*, 333 Ill. App. 3d 604, 615 (2002), citing *People v. Cox*, 295 Ill. App. 3d 666, 670 (1998).

When reviewing a ruling on a motion to suppress, the trial court's findings of fact are given deference and will be upheld unless they are against the manifest weight of the evidence. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004). However, a reviewing court reviews *de novo* the ultimate question of whether the evidence should have been suppressed. *Pitman*, 211 Ill. 2d at 512.

■ Both the United States and Illinois Constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. Where a police officer lacks probable cause to arrest an individual, that officer may briefly stop that individual for investigative purposes if he or she reasonably

believes, based on reasonable and articulable facts, that the individual has committed, or is about to commit, a crime. *Terry*, 392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880-81; *People v. Brown*, 343 Ill. App. 3d 617, 622 (2003). Pursuant to *Terry*, an officer may conduct a protective search of the individual if he or she reasonably believes that person may be armed. *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 885 S. Ct. at 1883; *In re A.V.*, 336 Ill. App. 3d 140, 144 (2002). Whether a stop is reasonable depends on the totality of the circumstances. *Alabama v. White*, 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412 (1990); *People v. Jackson*, 348 Ill. App. 3d 719, 728 (2004). An informant's tip may provide information sufficient to warrant a *Terry* stop if that information "bear[s] some indicia of reliability and [is] sufficient to establish the requisite quantum of suspicion." *Brown*, 343 Ill. App. 3d at 623. Put another way, "[i]n determining whether an informant's statements provide sufficient basis for a *Terry* stop, a reviewing court should consider the informant's veracity, reliability, and basis of knowledge." *People v. Sparks*, 315 Ill. App. 3d 786, 792 (2000). "If the third-party's information does not have 'some indicia of reliability,' police are not justified in relying on it as the basis for a *Terry* stop unless they 'conduct additional investigation to verify the information.'" *Jackson*, 348 Ill. App. 3d at 731, quoting *Sparks*, 315 Ill. App. 3d at 793.

■ Defendant first argues the tip from the informant was insufficient to justify the stop because Officer Rodriguez neither observed him engage in any suspicious behavior nor acquired information to independently corroborate the tip. Defendant argues that neither the informant's veracity nor basis of knowledge was established. Defendant therefore argues that Rodriguez lacked reasonable suspicion to either stop or frisk him. Defendant analogizes his case to *Florida v. J.L.*, 529 U.S. 266, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000).

In *J.L.*, the United States Supreme Court held that an anonymous telephone call to the police indicating that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" (*J.L.*, 529 U.S. at 268, 146 L. Ed. 2d at 259, 120 S. Ct. at 1377) was insufficient to justify a *Terry* stop and subsequent frisk. In that case, police officers stopped the respondent, a young black man wearing a plaid shirt at the particular bus stop, and recovered a gun. The respondent was not engaging in any suspicious behavior when he was stopped. In reaching its decision, the Supreme Court discussed its prior decision in *White*, 496 U.S. 325, 110 L. Ed. 2d 301, 110 S. Ct. 2412, which held an anonymous tip may be sufficient to justify a *Terry* stop if the informant accurately predicts the defendant's movements, as knowledge of a person's future movements may demonstrate the informant's basis of knowledge and indicate the tip is credible.

In *J.L.*, the Court distinguished *White*, a " 'close case' " (*J.L.*, 529 U.S. at 271, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379, quoting *White*, 496 U.S. at 332, 110 L. Ed. 2d at 310, 110 S. Ct. at 2417), because the anonymous tip in *J.L.* "lacked the moderate indicia of reliability" (*J.L.*, 529 U.S. at 271, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379) of the tip in *White* as it provided no predictive information. Because the tip in *J.L.* lacked such corroborating information, the informant's knowledge or credibility could not be tested. Rather, "[a]ll the police had to go on *** was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about [the respondent]." *J.L.*, 529 U.S. at 271, 146 L. Ed. 2d at 260, 120 S. Ct. at 1379. The Court concluded that although an accurate description of an individual's "readily observable location and appearance" is reliable in the sense that "[i]t will help the police correctly identify the person whom the tipster means to accuse," such an accurate description "does not show that the tipster has knowledge of concealed criminal activity." *J.L.*, 529 U.S. at 272, 146 L. Ed. 2d at 261, 120 S. Ct. at 1379.

We find *J.L.* to be distinguishable from the case at bar. The informant in this case, contrary to the tipster in *J.L.*, did demonstrate his basis of knowledge of the criminal activity. While the tipster in *J.L.* merely informed police that the respondent was at a particular bus stop carrying a gun, in the case at bar the informant told Rodriguez that he "observed" a man displaying a gun. Thus, in the case at bar, as opposed to in *J.L.*, the informant did in fact explain how he knew about the gun.

Further, the informant in the case at bar gave the information to Rodriguez in person, rather than by telephone. In *In re A.V.*, 336 Ill. App. 3d at 143-44, this court distinguished unknown individuals who approach police officers in person with information about criminal activity from unknown individuals who anonymously telephone tips. In that case, a teenager approached a police officer who was patrolling an area of a park to say that "a kid," a husky 16-year-old Hispanic boy wearing black jeans, a blue shirt and white gym shoes, was showing a gun to other "young people." *In re A.V.*, 336 Ill. App. 3d at 141. The informant indicated the direction in which the 16-year-old was located. The officer, heading toward the area of the suspect, was stopped by several others who also told him about a boy showing a gun. The officer then stopped the respondent, who matched the description but was not doing anything illegal, within about a minute and 200 feet from where he was first informed. The officer conducted a pat-down and recovered a loaded gun.

This court affirmed the trial court's denial of the respondent's motion to suppress, concluding that the information provided to the officer contained the requisite indicia of reliability. We explained that although the informants' names were unknown, the informants "were not anonymous in the same sense as the caller[ ] in *J.L.*." *In re A.V.*, 336 Ill. App. 3d at 144. This court noted that the informants were "identifiable" (*In re A.V.*, 336 Ill. App. 3d at 144) because they approached the officers and spoke to them in person. Further, the informants were still in the park where the incident occurred when they spoke to the police, and the information they provided was timely, as the respondent was stopped within one minute of the officer's receipt of the information. We also found that in that case, and contrary to in *J.L.*, the informants were "physically present" (*In re A.V.*, 336 Ill. App. 3d at 144) and not untraceable as the officers could have easily found the informants had their information proved false. Further, the original informant's tip was corroborated by several other people.

Defendant argues *In re A.V.* is distinguishable from the case at bar because in that case the informants' tips were determined to be reliable because the informants remained on the scene and therefore could have been held accountable if they provided false information. Defendant argues that in *In re A.V.*, the court was presented with "affirmative facts" demonstrating that the informants remained in the park and could be traced. In the case at bar, argues defendant, there are no facts in the record from which to infer that the informant remained on the scene or could have been found. We disagree.

Defendant does not indicate with what "affirmative facts" the court in *In re A.V.* was presented to enable it to draw the conclusion that the informants remained in the park, and the facts do not indicate that the arresting officer testified that the informants remained in the area. Our review of that case indicates that the court inferred this conclusion from facts indicating that the officers were stopped by the informants while in the park, and they subsequently stopped the respondent within one minute. In the case at bar, while Officer Rodriguez did not testify to the amount of time that passed from when he was stopped by the informant near North Avenue and Spaulding to the time he stopped defendant, Rodriguez testified that after he received the information from the informant, he went to the area of Lemoyne and Spaulding. As noted by the State, these two corners are approximately one-eighth of a mile apart. Rodriguez later testified that he was in a police car at the time. From these facts, we too can infer that had the informant's tip proved to have been false, the informant could have been traced, as he too would have remained

near the scene. We therefore do not find *In re A.V.* distinguishable on that basis and conclude that the informant's tip indicated the informant's basis of knowledge and included the requisite indicia of reliability.

 Defendant next argues that even if the informant's tip was reliable, the stop and subsequent frisk of defendant were unreasonable under *Terry* because the informant's description of the suspect as a black male wearing dark clothing is general and vague. Defendant points out that the tip included no information about the suspect's age, height, weight, complexion, or whether the suspect had facial hair or wore glasses. Defendant relies on several cases, including *People v. Washington*, 269 Ill. App. 3d 862 (1995), *People v. Byrd*, 47 Ill. App. 3d 804 (1977), and *In re T.L.L.*, 729 A.2d 334 (D.C. 1999), to support his contention. Those cases, however, are distinguishable from the one at bar.

In *Washington*, the arresting officers justified the warrantless stop of the defendant because "he fit the description" (*Washington*, 269 Ill. App. 3d at 865) of a robbery suspect they received by radio dispatch. The court upheld the trial court's granting of the defendant's motion to suppress because the State presented no evidence of what that description consisted or of how the defendant matched it to support the officers' conclusions. The court also noted that the record was devoid even of the race and gender of the suspect.[1] In this case, however, the State did present evidence that the informant described the person with the gun as a black man wearing dark clothing standing on a specific corner. Rodriguez then testified he went to that specific corner and saw defendant, a black man, who fit the description given by the informant.

In *Byrd*, this court affirmed the trial court's granting of the defendant's motion to suppress where the arresting officer testified that he stopped the defendant because he matched the description the

---

[1]In *Washington*, the State did present an offer of proof upon the denial of its motion to reopen the suppression hearing indicating that if called, one of the arresting officers would testify that the description of the offender was a black male wearing a blue coat and black hat fleeing westbound into Chatham Park. The officer then stopped the defendant, who matched the description, minutes later. The court noted "parenthetically" (*Washington*, 269 Ill. App. 3d at 868) that even if the evidence contained in the offer of proof had been offered at trial or at the suppression hearing, it would not have justified the stop of the defendant because it was general and was contradicted in part by the defendant's testimony. We need not consider this parenthetical finding as the court's holding rested on the fact that the State provided no evidence of the appearance of the offender.

officer received the previous day of a 5-foot-6-inch man with a light complexion weighing approximately 130 pounds suspected to have been involved in an armed robbery. This court found the stop to be unjustified, as the description "could fit a myriad of individuals" (*Byrd*, 47 Ill. App. 3d at 808) and was received 24 hours earlier. Further, the defendant was stopped approximately 14 blocks away from where the crime occurred. We concluded that "the general description, combined with the remote time and place of defendant's seizure, compels a finding that the officer's stop of defendant was unreasonable." *Byrd*, 47 Ill. App. 3d at 808. In the case at bar, while the description was less specific than that in *Byrd*, Officer Rodriguez stopped defendant just after receiving the information from the individual at the exact corner where the informant said he had seen the man with the gun, not 14 blocks away.

In *In re T.L.L.*, the District of Columbia Court of Appeals reversed the trial court's denial of the respondent's motion to suppress where the arresting officer testified to receiving only general descriptions of several armed robbery suspects. The court noted, however, that "[t]he generality of the descriptions of the robbers might not have been fatal if the accused had been apprehended immediately after the robbery at the location where the crime occurred." *In re T.L.L.*, 729 A.2d at 340-41. In the case at bar, although the description was even less specific than the one presented in *In re T.L.L.*, defendant was in fact apprehended just after the informant saw the offender at the precise location the informant provided.

Defendant further argues that the informant's description was insufficient to justify a *Terry* stop because it was not particular enough to eliminate innocent individuals, as any number of black men could be near the corner of Lemoyne and Spaulding at 4 p.m. As noted by the State, whether an officer has reasonable suspicion to warrant a *Terry* stop depends on the totality of the circumstances. *White*, 496 U.S. at 330, 110 L. Ed. 2d at 309, 110 S. Ct. at 2416; *Jackson*, 348 Ill. App. 3d at 729. On these facts, we conclude that the stop was justified and that the trial court properly denied defendant's motion to suppress evidence. An individual informed Officers Rodriguez and Lazaro near North Avenue and Spaulding that he had observed a black male wearing dark clothing displaying a gun at the corner of Lemoyne and Spaulding. The officers reasonably relied on this information, as it was provided by an identifiable individual who voluntarily came forward to report possible criminal behavior. The officers then drove the approximately one-eighth of a mile to that corner where they observed defendant, who matched the description given by the informant. Because defendant matched the description and was stand-

ing on the corner of Lemoyne and Spaulding shortly after the officers were approached by the informant, we conclude they had specific and articulable facts to justify a *Terry* stop. Because the informant said he had seen a gun, Rodriguez reasonably suspected defendant was armed and was justified in conducting a frisk. See *In re A.V.*, 336 Ill. App. 3d at 144. The gun then fell from defendant's waistband as he fled. Defendant's motion to suppress was properly denied.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

GORDON and McBRIDE, JJ., concur.