# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**People v. Rhinehart, 2011 IL App (1st) 100683**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CRISTEN RHINEHART, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-0683 |
| Filed | November 30, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an appeal from defendant's convictions for defacing identification marks of a firearm and aggravated unlawful use of a weapon arising from a tip provided by an unidentified person who flagged down the arresting officers and told them a black man in a white shirt and yellow pants with a gun was at a particular location, the appellate court held that defendant's motion to suppress was improperly denied, since the tip was not sufficiently reliable to provide the officers with a reasonable suspicion that defendant was engaged in criminal activity to justify a *Terry* stop, especially when the informant's identity was not known and the State did not present any testimony as to a basis for considering the tip reliable. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-11897; the Hon. Kenneth J. Wadas, Judge, presiding. |
| Judgment | Reversed. |

Counsel on Appeal

Michael J. Pelletier, Alan D. Goldberg, and Benjamin Wimmer, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Kathleen Warnick, Veronica Calderon, and Adam W. Delderfield, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE MURPHY delivered the judgment of the court, with opinion.
Presiding Justice Steele and Justice Neville concurred in the judgment and opinion.

## OPINION

¶ 1    Following a bench trial, defendant Cristen Rhinehart was found guilty of defacing identification marks of a firearm and aggravated unlawful use of a weapon and sentenced to one year of conditional discharge. On appeal, defendant contends that the trial court erred by denying his motion to suppress illegally obtained evidence, that the State failed to prove him guilty of aggravated unlawful use of a weapon or defacing identification marks of a firearm beyond a reasonable doubt, and that his convictions must be reversed because the statutes on which they are based violate his second amendment right to possess firearms for self-defense. For the reasons that follow, we reverse.

¶ 2                                BACKGROUND

¶ 3    Defendant was charged with defacing identification marks of a firearm and aggravated unlawful use of a weapon. Prior to trial, defendant filed a motion to quash his arrest and suppress physical evidence discovered as a result of his arrest and detention and statements he made during the detention following his arrest where that evidence was illegally obtained. At the hearing on that motion, Chicago police officer Keith Kalafut testified that about 10:50 a.m. on June 2, 2008, he was on patrol when an unidentified citizen flagged him down, informed him that a black male wearing a white shirt and yellow pants had a gun, and provided him with the man's location. Officer Kalafut then proceeded to 2133 South Millard Avenue in Chicago, which was a high-crime area, and saw defendant, who matched the description of the individual with the gun. Officer Kalafut identified himself as a police officer, then conducted a pat-down search of defendant and found a gun.

¶ 4    Following Officer Kalafut's testimony, the prosecutor asserted that the officer had conducted a valid protective pat-down search of defendant where defendant matched the description of the man with a gun in terms of appearance and location and was located in a

high-crime area. Defense counsel, citing *Florida v. J.L.*, 529 U.S. 266 (2000), responded that the stop and search of defendant was not valid pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968), because it was based on an anonymous tip. The court then denied defendant's motion, finding *J.L.* distinguishable from this case because here the tip was provided in person by the informant, while in *J.L.*, the tip was made anonymously and over the phone.

¶ 5    At trial, Officer Kalafut testified that about 11 a.m. on June 2, 2008, he was on patrol with Officer David McCray when an unidentified woman flagged them down east of Millard Avenue. The woman told the officers that a black male wearing a white shirt and yellow pants on the 2100 block of Millard had a black handgun. The officers proceeded to the 2100 block of Millard and saw defendant, who was wearing a white shirt and yellow pants and was standing next to another man. The officers exited their vehicle, announced that they were police officers, and approached defendant. The man standing next to defendant, who was later discovered to be his brother, ran into an apartment at 2135 South Millard, and Officer McCray chased after him.

¶ 6    Defendant, however, did not flee, and Officer Kalafut performed a protective pat-down search of him and noticed a hard object on his right waistband that had the shape and feel of a handgun. Officer Kalafut recovered that item and determined that it was a Colt .45 and that its serial number had been scratched off. Defendant was subsequently provided his *Miranda* rights and taken to the police station, where he told Officers Kalafut and McCray that his brother had recently been killed and that the gun was for his protection. Defendant further informed the officers that he had bought the gun from a "crack head" on the street for $100.

¶ 7    Officer McCray also testified at defendant's trial, and his testimony was consistent with that of Officer Kalafut. Based on this evidence, the trial court found defendant guilty of defacing identification marks of a firearm and aggravated unlawful use of a weapon.

¶ 8                                            ANALYSIS

¶ 9    In this appeal, defendant first contends that his convictions must be reversed because the trial court erred by denying his motion to suppress illegally obtained evidence. In reviewing a trial court's ruling on a motion to suppress, we accept the court's findings of fact unless they are against the manifest weight of the evidence, but review its ultimate ruling as to whether suppression is warranted *de novo*. *People v. Harris*, 228 Ill. 2d 222, 230 (2008). In doing so, we may properly consider the testimony given at trial in addition to that provided at the suppression hearing. *People v. Slater*, 228 Ill. 2d 137, 149 (2008).

¶ 10    The United States and Illinois Constitutions guarantee citizens the right to be free from unreasonable searches and seizures. U.S. Const., amends. IV, XIV; Ill. Const. 1970, art. I, § 6. In *Terry v. Ohio*, 392 U.S. at 29-31, the United States Supreme Court held that a police officer "may, within the parameters of the fourth amendment, conduct a brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity." *People v. Gherna*, 203 Ill. 2d 165, 177 (2003). In addition, the Code of Criminal Procedure of 1963 provides that a peace officer, after having identified himself as such, may stop any person in a public place for a reasonable period of time when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed

a criminal offense. 725 ILCS 5/107-14 (West 2008). While reasonable suspicion is a less demanding standard than probable cause, the fourth amendment requires at least a minimal level of objective justification for making the stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000).

¶ 11     Defendant asserts that the tip provided by the citizen informant in this case was not sufficiently reliable to provide Officer Kalafut with a reasonable suspicion of criminal activity to justify a *Terry* stop because the informant was effectively anonymous and the tip was not corroborated by any facts and did not demonstrate the basis of the informant's knowledge. The State responds that the informant in this case was not anonymous where she personally provided the tip and that additional bases for reasonable suspicion existed where defendant's brother fled at the sight of the officers, the tip described defendant's unusual clothing, and the stop occurred in a high-crime area.

¶ 12     In *Florida v. J.L.*, 529 U.S. at 268, the supreme court held that an anonymous telephone tip "that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun" was not sufficiently reliable to justify a *Terry* stop. In doing so, the court cited to its previous holding in *Alabama v. White*, 496 U.S. 325, 329 (1990), in which it stated that " 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.' " *Id.* at 270. The court ultimately determined that a reasonable suspicion of criminal behavior was not present where the tip was given anonymously over the phone and the informant did not explain how he knew of the gun or supply any basis for believing that he had inside information about the defendant. *Id.* at 271.

¶ 13     The record shows that in denying defendant's motion to suppress, the trial court stated that the major difference between this case and *J.L.* was that "this is not really an anonymous phone call type tip. This is a person that flags down the police on the street and tells the police about a person with a gun." The court then reiterated that "I don't think it is exactly the anonymous tip type scenario laid out in *Florida v. J.L.*"

¶ 14     Initially, we agree with the trial court that this case differs from *J.L.* in that the informant here provided the tip in person, and not over the telephone. When police rely on an anonymous telephone call, they must base their credibility assessments on little more than the caller's tone of voice and corroboration of the information provided by the caller. See *id.* Here, prior to the *Terry* stop, Officer Kalafut spoke to the informant and developed an initial impression of her credibility from her physical appearance and tone of voice. However, to justify a *Terry* stop, the State must point to specific, articulable facts that gave rise to the officer's reasonable suspicion of criminal activity. *People v. Payne*, 393 Ill. App. 3d 175, 180 (2009). For example, Officer Kalafut could have relied on his observations of defendant's behavior to justify the *Terry* stop if he had seen defendant attempt to conceal an object or act in some other way that aroused suspicion of criminal activity. See *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975). Officer Kalafut could have also relied on the tip to justify the *Terry* stop if the informant had accurately predicted defendant's behavior or explained how she knew of his criminal behavior, or if Officer Kalafut had obtained the informant's name and address so that she could have been held accountable had the information been fabricated. See *J.L.*, 529 U.S. at 270-71. In this case, however, the State has not presented evidence explaining the reasons Officer Kalafut considered the informant reliable.

-4-

¶ 15    We cannot determine from this record whether Officer Kalafut reasonably believed the informant's tip. Officer Kalafut testified to the content of the tip, but neither party asked him any questions regarding his observations of the informant or the reasons he believed the tip was reliable. The informant gave no indication of how she knew of the alleged criminal activity, and the tip itself included no prediction of defendant's future actions. Thus, although the informant here provided the tip in person rather than over the telephone, the State has not established how that difference makes the tip in this case more reliable than the tip provided in *J.L.*

¶ 16    Further, the record shows that the officers did not know the informant's identity. Thus, Officer Kalafut could not have assessed the informant's reputation at the time he received the tip and the officers would have had difficulty locating her to hold her accountable had the tip been fabricated (*People v. Carlson*, 313 Ill. App. 3d 447, 449 (2000)). Officer Kalafut was not asked whether he could have located the informant if the tip had been fabricated or what steps could have been taken to find her.

¶ 17    In addition, the other bases for reasonable suspicion asserted by the State are insufficient to justify the *Terry* stop in this case. The fact that defendant's brother fled at the sight of the police officers does not cast suspicion upon defendant where he did not engage in suspicious activity (*People v. Garvin*, 219 Ill. 2d 104, 110 (2006)) and Officer Kalafut did not know that the men were brothers at the time he conducted the *Terry* stop. Although the record shows that the tip accurately described defendant's readily observable location and unusual clothing, that fact does not show that the informant had knowledge of concealed criminal activity. *J.L.*, 529 U.S. at 272. In addition, the record does not disclose the interaction between Officer Kalafut and the informant. Further, to the extent Officer Kalafut testified that the stop occurred in a high crime area, the officer's statement alone is insufficient to establish that fact and does not provide a basis for justifying a *Terry* stop. *People v. Harris*, 2011 IL App (1st) 103382, ¶ 14.

¶ 18    As such, we determine from the record before us that the tip provided by the citizen informant in this case was not sufficiently reliable to provide Officer Kalafut with a reasonable suspicion that defendant was engaged in criminal activity to justify a *Terry* stop. We therefore conclude that the trial court should have granted defendant's motion to suppress and excluded evidence of the gun and his statements regarding the gun.

¶ 19    In reaching that conclusion, we have considered *People v. Miller*, 355 Ill. App. 3d 898 (2005), and *In re A.V.*, 336 Ill. App. 3d 140 (2002), cited by the State, and find those cases distinguishable. In *Miller*, 355 Ill. App. 3d at 902-04, this court held that an in-person tip provided by an unidentified informant justified a *Terry* stop where the informant stated that he had seen the accused displaying the handgun and the informant could have been traced in the event the tip proved to have been fabricated because he provided the tip only one-eighth of a mile away from the location of the stop. In this case, however, the record does not contain evidence showing that the informant stated that she had seen the handgun or establishing the distance between the location at which the tip was given and the site of the *Terry* stop. In *In re A.V.*, 336 Ill. App. 3d at 144, this court held that in-person tips provided by six or seven unnamed informants justified a *Terry* stop where the tips were corroborated by one another and the informants could have been found and held accountable because they

were located in the park in which the stop occurred. In this case, however, the tip was not corroborated by other tips from additional informants and the officers would have had difficulty finding the informant.

¶ 20    A person commits the offense of aggravated unlawful use of a weapon when he knowingly carries a firearm while he is not on his land or in his abode or fixed place of business or carries or possesses a firearm while on any public street, alley, or other public lands, and the firearm was uncased, loaded, and immediately accessible. 720 ILCS 5/24-1.6 (West 2008). A person commits the offense of defacing identification marks of a firearm when he possesses a firearm upon which the manufacturer's serial number has been changed, altered, removed, or obliterated. 720 ILCS 5/24-5(b) (West 2008). Thus, the State was required to establish beyond a reasonable doubt that defendant possessed the handgun at issue in order to prove him guilty of aggravated unlawful use of a weapon and defacing identification marks of a firearm. Without the suppressed evidence of the gun and defendant's statements regarding it, the State cannot prove that he possessed the handgun at issue, and his convictions must therefore be reversed outright. *People v. Davis*, 398 Ill. App. 3d 940, 962 (2010). As such, we need not consider defendant's further contentions regarding the sufficiency of the evidence and the second amendment.

¶ 21    In reaching this decision, we note that we can only review that evidence which is in the record (*People v. Steidl*, 142 Ill. 2d 204, 226 (1991)) and reiterate that the record in this case does not contain the facts upon which Officer Kalafut relied in determining that the informant was credible or his reasons for making that determination.

¶ 22    Reversed.