THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FELIX CABAN, JR., Defendant-Appellant.

First District (6th Division)   No. 1—99—1136

Opinion filed January 12, 2001.—Rehearing denied February 27, 2001.

Frederick F. Cohen, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Linda Woloshin, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

In December 1996, a grand jury indicted defendant Felix Caban, Jr., for first degree murder. In October 1998, pursuant to a plea agreement, the trial court sentenced defendant to 52 years' imprisonment. Two days later, the State moved to vacate the plea and sentence, arguing that defendant's sentence did not conform to statutory guidelines set forth in section 5—8—1(a)(1)(c)(ii) of the Unified Code of Corrections (Code of Corrections) (730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1998)). The trial court granted the State's motion. Defendant then filed a motion to dismiss, arguing that trial would subject defendant to

double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). The trial court denied defendant's motion and he appeals, arguing that (1) the trial court should have done nothing insofar as section 5—8—1(a)(1)(c)(ii)'s constitutionality was in question; (2) the sentencing scheme under section 5—8—1(a)(1)(c)(ii) did not apply; (3) the trial court's decision to vacate the plea agreement constituted a fourteenth amendment due process violation; and (4) the trial court's decision deprived defendant of his right to avoid double jeopardy. We affirm.

## I. BACKGROUND

On October 5, 1998, the trial court conducted a hearing on defendant's case. The parties advised the trial court that they had reached a plea agreement under which defendant would serve 52 years in the penitentiary.

The State advised the trial court that, if the matter proceeded to trial, the evidence would show that, on December 13, 1996, defendant was babysitting for his live-in girl friend, Nancy Barrera. Barrera had two children: Arturo (then age five) and Vanessa (then age six). At approximately 8 p.m., Vanessa left the apartment and knocked on her neighbor Angel Baez' door and asked him to come to her apartment. If called upon, Baez would testify that he entered the apartment and saw Arturo lying on the floor. He also saw defendant, who had blood on his face and left hand. Baez saw that Arturo was unconscious and shaking very badly. Baez called for his wife. She entered the apartment, made the same observations, and called 911.

Paramedics arrived and found Arturo lying on the floor and having seizures. They noted bruises on his head and body and rushed him to the hospital, where he died. One paramedic, Arturo Alvarado, would testify that defendant admitted that he struck the boy.

Dr. Al Johnson examined Arturo at Children's Memorial Hospital and would testify that he could determine, within a reasonable degree of medical and scientific certainty, that Arturo's injuries were not accidental and were caused by an adult.

Dr. Mitra Kalelkar would testify that she is a licensed medical doctor and an expert in forensic science. She would testify that she examined Arturo's body on December 16, 1996, and observed several injuries on his head and face. Specifically, she observed a skull fracture involving the left parietal temporal bone and several subdural brain hemorrhages. She noted lacerations of the left parietal lobe of the brain and a cerebral edema. She also noted a healing rib fracture on the right tenth rib, a healing adrenal laceration on the right side, and other multiple injuries about the body. The State advised the court

that, if called to testify, Dr. Kalelkar would opine, within a reasonable degree of medical and scientific certainty, that Arturo died from cranial cerebral injuries sustained as a result of blunt trauma to the head and face. Further testimony from Dr. Mark Reyes, a neuropathologist, would support that of Dr. Kalelkar.

Finally, Assistant State's Attorney Karen O'Malley would testify that she interviewed defendant at police headquarters. O'Malley would testify that defendant admitted that he had been beating Arturo for approximately two or three months, usually once or twice per week. Defendant further admitted to O'Malley that, on the night in question, he lifted Arturo and threw him to the ground.

Defendant stipulated to the facts as the Stated presented them. The court accepted the parties' plea agreement and, after admonishing defendant, sentenced him to 52 years' imprisonment.

On October 7, 1998, the State moved to vacate the plea and sentence, arguing that the sentence did not conform with section 5—8—1(a)(1)(c)(ii) of the Code of Corrections, which mandates a natural life sentence. On December 21, 1998, the court agreed and granted the State's motion.

On December 30, 1998, the court denied defendant's motion to reconsider. Defendant also filed a motion to dismiss, arguing that trial would subject defendant to double jeopardy (U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10). The trial court denied defendant's motion, and defendant then filed the instant appeal.

## II. ANALYSIS

On appeal, defendant argues that (1) the trial court should have done nothing insofar as the statute's constitutionality was in question; (2) the sentencing scheme under the amended statute did not apply; (3) the trial court's decision to vacate the plea agreement constituted a fourteenth amendment due process violation; and (4) the trial court's decision deprived him of his right to avoid double jeopardy.

### A. Statute in Issue

In 1994, section 5—8—1(a) of the Code of Corrections read in pertinent part as follows:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this [s]ection, according to the following limitations:

(1) for first degree murder,

(a) a term shall be not less than 20 years and not more than 60 years, or
***

(c) if the defendant,

\*\*\*

(ii) is found guilty of murdering more than one victim,

\*\*\*

(v) \*\*\* the court shall sentence the defendant to a term of natural life imprisonment." 730 ILCS 5/5—8—1(a) (West 1994).

Thus, pursuant to the 1994 version of the statute, a violation of section 5—8—1(a), under these facts, would have subjected defendant to 20 to 60 years' imprisonment. However, our legislature amended section 5—8—1(a) in Public Act 89—203 (Pub. Act 89—203 eff. July 21, 1995). Under the amended statute, a section 5—8—1(a) violation under these facts would subject defendant to a mandatory life term. As amended, section 5—8—1(a) read in pertinent part as follows:

"(a) Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this [s]ection, according to the following limitations:

(1) for first degree murder,

(a) a term shall be not less than 20 years and not more than 60 years, or

\*\*\*

(c) the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed if the defendant,

\*\*\*

(ii) is a person who, at the time of the commission of the murder, had attained the age of 17 or more and is found guilty of murdering an individual under 12 years of age; or, irrespective of the defendant's age at the time of the commission of the offense, is found guilty of murdering more than one victim[.]" 730 ILCS 5/5—8—1(a) (West 1998).

## B. *People v. Wooters*

In *People v. Wooters*, 188 Ill. 2d 500, 510-20 (1999), our supreme court held that Public Act 89—203 violated the single-subject clause of the Illinois Constitution. The effect of an unconstitutional amendment is to restore the statute as it existed prior to the amendment. *McCann v. Presswood*, 308 Ill. App. 3d 1068, 1073 (1999).

However, *Wooters* was not decided until after the events transpired in the instant case. Throughout his brief, defendant places considerable weight on the fact that, at the time the trial court considered the State's motion to vacate, the *Wooters* decision was pending in the

supreme court. Therefore, defendant argues, "there was no rational basis for the [circuit court to] grant *** the State's motion to vacate the sentence." We reject this argument. In *People v. Wheeler*, 299 Ill. App. 3d 245, 252-54 (1998), the Fourth District held that section 5—8—1(a)(1)(c)(ii) of the Code of Corrections did not violate the single-subject rule. A decision of the appellate court, although not binding on other appellate districts, is generally binding on the circuit courts throughout the state. *State Farm Fire & Casualty Co. v. Yapejian*, 152 Ill. 2d 533, 539-40 (1992). Therefore, until either the First District or the Supreme Court of Illinois held otherwise, the circuit court was required to follow *Wheeler*.

### C. Applicability of Statute

As noted previously, section 5—8—1(a)(1)(c) of the amended statute mandated that "the court shall sentence the defendant to a term of natural life imprisonment when the death penalty is not imposed." 730 ILCS 5/5—8—1(a)(1)(c) (West 1998). Defendant interprets this language to mean that the amended statute did "not apply in cases *** where the defendant was *not eligible* for the death penalty" under section 9—1(b)(7) of the Criminal Code of 1961 (720 ILCS 5/9—1(b)(7) (West 1998)). (Emphasis added.) Therefore, defendant argues, because the life sentence provision did not apply, the trial court erroneously vacated his guilty plea and the judgment thereon.

Defendant cites no authority to support this tenuous interpretation of the amended statute. In any event, because the supreme court found the amendment unconstitutional (*Wooters*, 188 Ill. 2d at 510-20), we deem this argument moot.

### D. Fourteenth Amendment

Defendant next argues that due process "forbids the State *** from depriving defendant of the benefit of plea negotiations in this case." Defendant notes his right to be "free of mental anguish" and argues that "defendants and the public have a right to rely on representations made by the government and the judiciary." We certainly do not quarrel with this general proposition. However, that does not foreclose our analysis.

The United States Supreme Court considered the role of the due process clause with respect to plea agreements in *Mabry v. Johnson*, 467 U.S. 504, 81 L. Ed. 2d 437, 104 S. Ct. 2543 (1984). There, the defendant entered into plea negotiations with the government. When defense counsel called the prosecutor to express defendant's desire to accept the government's offer, the prosecutor apologized and said that he made a mistake.

On review, the Court held:

"A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of the court, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of [defendant's] liberty at issue here." *Mabry*, 467 U.S. at 507-08, 81 L. Ed. 2d at 442, 104 S. Ct. at 2546.

The Court further stated that "[i]t follows that when the prosecution breaches its promise with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and hence his conviction cannot stand." 467 U.S. at 509, 81 L. Ed. 2d at 444, 104 S. Ct. at 2547.

Thus, such agreements are subject to judicial enforcement. *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 499 (1971). The integrity of the judicial process requires that plea negotiations be accompanied by adequate safeguards

"to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 30 L. Ed. 2d at 433, 92 S. Ct. at 499.

In some instances, specific enforcement of plea arrangements is an appropriate remedy when a party breaches the agreement or when a party has demonstrated substantial reliance on the agreement. See, *e.g.*, *Mabry v. Johnson*, 467 U.S. 504, 507-08, 81 L. Ed. 2d 437, 442, 104 S. Ct. 2543, 2546 (1984) (stating that, when a plea rests on a prosecutor's promise, that promise must be fulfilled).

However, specific performance is problematic when the original promise upon which the defendant has relied cannot *legally* be fulfilled, as is the case here. See *City of Chicago v. Roman*, 184 Ill. 2d 504, 510 (1998) (finding that a trial court generally has no authority to impose punishment other than that provided by statute). The Court in *Santobello* identified the possible remedies for an unfulfillable plea agreement as either specific performance of the agreement or withdrawal of the guilty plea, with the ultimate decision to be discretionary and guided by the circumstances of each case. *Santobello*, 404 U.S. at 263, 30 L. Ed. 2d at 433, 92 S. Ct. at 499.

Illinois courts have not squarely addressed this issue with great frequency. In fact, the Second District considered this issue as a matter of first impression in *People v. Hare*, 315 Ill. App. 3d 606 (2000). In *Hare*, the defendant and State reached a plea agreement that did not conform to statutory guidelines. The trial court judge accepted

defendant's plea and sentenced him. Six days later, on its own motion, the trial court vacated the judgment, declaring the plea agreement void. *Hare*, 315 Ill. App. 3d at 608. On review, the Second District agreed with the State's argument that the trial court invalidated not only the sentence, but the plea agreement as well. *Hare*, 315 Ill. App. 3d at 609-11. The court stated that "when a trial court vacates an illegal sentence that it entered in accordance with a plea agreement, the illegality voids the entire agreement and not merely the sentence." *Hare*, 315 Ill. App. 3d at 610. Therefore, the court concluded, specific performance was not a viable option. *Hare*, 315 Ill. App. 3d at 609-11.

Some jurisdictions have reached alternative results. Some courts have held that the proper remedy for an unfulfillable promise is to give defendant the benefit of his bargain. See *Commonwealth v. Zuber*, 466 Pa. 453, 460-61, 353 A.2d 441, 445-46 (1976) (proper remedy for unfulfillable promise of concurrent sentence was modification of sentence, notwithstanding law that sentences must be consecutive). Other jurisdictions give defendants the option of withdrawing their pleas or receiving specific performance. See *State v. Parker*, 334 Md. 576, 607, 640 A.2d 1104, 1119 (1994) (defendant's choice of remedy for an unfulfillable plea bargain controls).

However, significant authority supports the result reached in *Hare*. See, *e.g.*, *People v. Jackson*, 121 Cal. App. 3d 862, 176 Cal. Rptr. 166 (1981) (finding that, because defendant's guilty plea was induced by a promise of sentence that was less than statutory minimum, defendant may withdraw plea but is not entitled to benefit of bargain of illegal sentence); *Chae v. People*, 780 P.2d 481, 486 (Colo. 1989) (illegal sentence recommendation as material element of plea agreement will render agreement invalid and require that guilty plea be vacated); *State v. Hernandez*, 107 Idaho 947, 949, 694 P.2d 1295, 1297 (1985) (plea based on promise that cannot be met by the state must be withdrawn at defendant's insistence); *People v. Selikoff*, 35 N.Y.2d 227, 228, 318 N.E.2d 784, 791, 360 N.Y.S.2d 623, 633 (1974) (specific enforcement not available because any sentence "promise" at the time of plea is, as a matter of law and public policy, conditional upon its being lawful and appropriate; proper remedy is to allow withdrawal of guilty plea). See also C. Vaeth, Annotation, *Guilty Plea as Affected by Fact that Sentence Contemplated by Plea Bargain is Subsequently Determined to be Illegal or Unauthorized*, 87 A.L.R.4th 384 (1991).

We find that, generally, the better remedy is for the circuit court to vacate the defendant's guilty plea, as it did in the instant case. This conclusion is supported by our supreme court's repeated finding that the trial court generally has no authority to impose punishment other than that provided by statute. See *Roman*, 184 Ill. 2d at 510.

Fundamental principles of contract law also support this conclusion. Plea agreements are essentially contractual in nature and, subject to constitutional considerations, are controlled largely by contract law. See *People v. Boyt*, 129 Ill. App. 3d 1, 18 (1984). One of the most elementary principles of contract law is that an illegal contract is void *ab initio*. See *T.E.C. & Associates, Inc. v. Alberto-Culver Co.*, 131 Ill. App. 3d 1085, 1096 (1985).

## E. Double Jeopardy

Defendant also contends that the trial court erred by vacating the judgment (based upon the plea agreement) and by denying his motion to dismiss. This error, defendant contends, subjected him to double jeopardy. We disagree.

Defendant relies primarily on *People v. Laws*, 29 Ill. 2d 221 (1963). In *Laws*, a bench trial had already begun and evidence had already been presented when it was learned that the defendant had never entered a plea. The assistant State's Attorney, believing that a valid judgment of conviction could not be entered without a plea, moved for a mistrial and the court granted the motion. Both the trial court and the assistant State's Attorney were apparently unaware of an Illinois Supreme Court ruling that a conviction entered absent a plea is valid (*People v. Hill*, 17 Ill. 2d 112 (1959)). The State then sought and obtained a new indictment. The defendant moved for discharge, and the trial court denied defendant's motion. Defendant appealed from the trial court's order and the supreme court reversed, stating that "neither manifest necessity nor the ends of justice required or justified the mistrial. *** [W]here the trial court could have proceeded to a valid judgment, it is our opinion that it was an abuse of discretion to declare a mistrial." *Laws*, 29 Ill. 2d at 225-26. On that basis, the court found that a second trial would violate the defendant's protection from double jeopardy. *Laws*, 29 Ill. 2d at 226.

Defendant argues that here, as in *Laws*, "there [was] no 'manifest necessity' [to] abort[ ] the proceeding ***. *** [T]o proceed with prosecution *** after [an] improperly aborted prosecution[ ] violates the defendant's *** right against double jeopardy."

We find *Laws* inapposite to the instant case. Here, the trial court had no discretion to exercise—it was *required* to vacate the judgment against defendant. Our supreme court made that clear in *People v. Wade*, 116 Ill. 2d 1 (1987). In *Wade*, defendant was charged with robbery and entered into a plea agreement with the State in which it was stipulated that he had no prior convictions. Pursuant to the agreement, the court sentenced Wade to 90 days in jail, with time considered served, and to 36 months' probation. Nine months later, a probation

officer informed the trial court that Wade had previously been convicted of armed robbery and rape. These convictions made Wade statutorily ineligible for probation. In the ensuing proceeding, the trial court held that the order granting probation was void due to Wade's ineligibility for probation and resentenced him to a term of imprisonment. Our supreme court affirmed, ruling that the trial court exceeded its authority, albeit mistakenly, by ordering a penalty unauthorized by the legislature, which has the exclusive authority to establish criminal penalties. *Wade*, 116 Ill. 2d at 6-7.

We conclude that the trial court was required to vacate the void sentence and that a trial would not subject defendant to double jeopardy. As noted above, a trial court must impose the criminal penalties that the legislature has mandated and has no authority to impose punishment other than that provided by statute. *Roman*, 184 Ill. 2d at 510. A court generally exceeds its authority when it orders a lesser sentence than that which the statute mandates. See *Wade*, 116 Ill. 2d at 7. In such a case, the defendant's sentence is illegal and void, and a void judgment may be attacked at any time either directly or collaterally. *Roman*, 184 Ill. 2d at 510. The duty to vacate a void judgment is based upon the inherent power of the court to expunge from its records void acts of which it has knowledge. See *People v. Magnus*, 262 Ill. App. 3d 362, 365 (1994).

Our supreme court's decision in *People v. Pankey*, 94 Ill. 2d 12 (1983), supports our conclusion that double jeopardy does not exist here. In *Pankey*, the court examined the trial court's judgment and found that the trial court lacked jurisdiction over the defendant. The supreme court held that such a judgment is "absolutely void and no bar to a subsequent trial in a court which has jurisdiction." *Pankey*, 94 Ill. 2d at 20.

### III. CONCLUSION

We find, as did the trial court, that the legislature's act of amending section 5—8—1 of the Code of Corrections rendered defendant's nonconforming sentence void. We further find that the trial court's actions did not subject defendant to double jeopardy.

We note, however, that in *Wooters*, the supreme court voided the statute that rendered defendant's plea agreement void. Thus, had defendant subsequently gone to trial, been convicted, and sentenced to life imprisonment pursuant to the amended version of section 5—8—1, we would be obliged to vacate defendant's sentence. However, that did not happen. Therefore, our opinion confines itself to the events that transpired.

It is entirely possible that, when this case goes back to the circuit

court, defendant may be eligible to receive the 52-year plea agreement that he and the State originally contemplated. While that may render this appeal somewhat academic, we cannot hold, as a matter of law, that the State is required to renew its offer of 52 years or that the trial court must enter such a sentence. Rather, that will be up to defendant, the State, and the circuit court.

For the foregoing reasons, we affirm the trial court and remand for trial.

Affirmed and remanded.

CAMPBELL, P.J., and GALLAGHER, J., concur.