NO. 4-06-0378     Filed 7/31/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| RIO P. KEYS, | ) | No. 05CF219 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Harold J. Frobish, |
| | ) | Judge Presiding. |

_____

JUSTICE McCULLOUGH delivered the opinion of the court:

In March 2006, the trial court convicted defendant, Rio P. Keys, of unlawful possession of a controlled substance (heroin) (720 ILCS 570/402(c) (West 2004)) and obstructing a peace officer (720 ILCS 5/31-1(a) (West 2004)). In April 2006, the court sentenced defendant to a six-year prison term on the unlawful possession count. Defendant appeals, arguing the court erred in denying his motion to suppress the evidence recovered as the result of his unconstitutional temporary seizure and pat-down search. The State argues that (1) the temporary seizure and pat-down search were constitutionally valid; and, even if the defendant's initial seizure was unconstitutional, (2) defendant's actions of running from the police and abandoning the illegal drugs made them admissible. We affirm.

As the parties are aware of the facts in this case, we discuss those facts only to the extent necessary to resolve the

issue in this case. Between approximately 8 and 8:30 a.m. on August 24, 2005, a black vehicle with four black males inside pulled up alongside Sergeant Jim Roberts. One of the black males stuck a cell phone out the window of the vehicle and took a picture of Sergeant Roberts. Not long thereafter, a man informed the police that four black males in a black vehicle approached him asking where they could find Willie B. Smith and Amory Millsap. The police knew Willie B. Smith and Amory Millsap as drug users.

Sergeant Roberts found the taking of his photograph suspicious and informed the other police officers on duty of the incident at the 3 p.m. shift change. Approximately one hour after the shift change, at about 4 p.m., Officer Robert Bohm saw Willie Smith with two black males in his vehicle, one of whom was the defendant and the other was Tremaine Moore. After Officer Bohm began following Smith, Smith voluntarily parked his vehicle and Smith and his two companions voluntarily got out of the vehicle. Officer Bohm asked Smith if the two men with him had been looking for him earlier. Smith said they had.

Officer John Cox arrived on the scene about this time. Smith told Officer Cox that defendant and Moore had been dropped off by two other black males earlier and they were going to a party for a friend of theirs who was leaving for Iraq. Smith also told Officer Cox defendant and Moore were from the Kankakee

area.  Officer Bohm asked defendant and the other black male for their names and dates of birth and ran a warrant check on their names.  Neither individual had any outstanding warrants. Defendant had on a very baggy T-shirt and baggy pants.  Officer Cox testified defendant was "pretty beefy" and looked like he could fight if he so chose.

Officer Bohm asked Moore for consent to do a pat-down search.  Moore consented.  Officer Cox did not ask defendant's consent to do a pat-down search.  Officer Cox asked defendant if he had anything on him.  Defendant replied he did not.  Officer Cox then told defendant to raise his hands above him and interlace his fingers, which defendant did.  Defendant also spread his legs for Officer Cox.  Officer Cox then put his right hand on defendant's interlaced fingers.  At that point, defendant broke free and ran.  While Officer Cox was chasing defendant, he lost sight of defendant for a few seconds before apprehending him.  Officer Cox went back and looked in the area where he lost sight of defendant and found three bags containing heroin.  The trial court denied defendant's motion to suppress these drugs.

A trial court's ruling on a motion to suppress presents a mixed question of law and fact.  People v. Pitman, 211 Ill. 2d 502, 512, 813 N.E.2d 93, 100 (2004).  We will not disturb a trial court's findings of fact unless they are against the manifest weight of the evidence, but the ultimate legal determination as

to whether the motion to suppress should have been granted based on the court's factual findings is a question of law, which we review de novo. Pitman, 211 Ill. 2d at 512, 813 N.E.2d at 100-01. Defendant contests neither the facts to which the police officers testified at the suppression hearing nor their credibility. Defendant only argues that the trial court erred in finding the police did not violate his constitutional rights by seizing him and performing a pat-down search of his person based on the facts to which the officers testified. As a result, we review this case de novo. We may affirm the circuit court's judgment on any basis established by the record. People v. Johnson, 208 Ill. 2d 118, 129, 803 N.E.2d 442, 449 (2003).

We first examine the State's argument that the drugs were admissible because defendant resisted a police officer and then abandoned the drugs while he was running from that police officer. Evidence discovered as a result of an unconstitutional Terry stop must generally be excluded. See Terry v. Ohio, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). However, according to the State, even assuming arguendo that the police officers did not have a reasonable suspicion to seize and pat down defendant, the drugs were still admissible. According to the State, the drugs in this case were not obtained through the exploitation of the seizure and attempted pat down but were discovered as a result of defendant escaping from the police

officers and abandoning the drugs.  As a result, according to the State, the drugs are admissible regardless of whether the initial seizure and attempted pat-down search were constitutional.

The State primarily relies on the Supreme Court of Nevada's decision in State v. Lisenbee, 116 Nev. 1124, 13 P.3d 947 (2000), to support its argument that the drugs should be admissible.  However, dicta from the United States Supreme Court's opinion in California v. Hodari D., 499 U.S. 621, 113 L. Ed. 2d 690, 111 S. Ct. 1547 (1991), which was relied on in part by the Nevada Supreme Court in Lisenbee, is even more persuasive. In Hodari, the Court stated:

> "To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape, is not to say that for [f]ourth [a]mendment purposes there is a continuing arrest during the period of fugitivity.  If, for example, [Officer] Pertoso had laid his hands upon Hodari to arrest him, but Hodari had broken away and had then cast away the cocaine, it would hardly be realistic to say that [the] disclosure had been made during the course of an arrest.  Cf. Thompson v. Whitman, [85 U.S.] (18 Wall.) 457, 471[, 21 L. Ed. 897,

902] (1874) ('A seizure is a single act, and not a continuous fact')." (Emphasis in original.) Hodari, 499 U.S. at 625, 113 L. Ed. 2d at 696-97, 111 S. Ct. at 1550.

Applying the Court's reasoning, we find it unrealistic in our case to say defendant abandoned the drugs in question during his seizure.

In Lisenbee, the police were looking for a burglary suspect and observed the defendant, who resembled the suspect. Lisenbee, 116 Nev. at 1124, 13 P.3d at 948. The police officers approached the defendant and asked for identification. The defendant produced identification from a Colorado prison. Lisenbee, 116 Nev. at 1126, 13 P.3d at 948-49. The defendant then voluntarily lifted up his T-shirt to show the police officers a small legal knife and a cell phone clipped to his belt. Lisenbee, 116 Nev. at 1126, 13 P.3d at 949. One of the police officers tried to grab the knife and hold the defendant's arm so that a pat-down search could be performed. Lisenbee, 116 Nev. at 1126, 13 P.3d at 949.

The officers and the defendant started fighting, and the defendant ran from the officers. The defendant was then tackled, but he got away again. The officers lost sight of the defendant for awhile. He was eventually found lying on the ground and voluntarily submitted to police custody. Lisenbee,

116 Nev. at 1126, 13 P.3d at 949.  The officers then retraced the defendant's path and found a large bag containing five smaller bags of methamphetamine.  Lisenbee, 116 Nev. at 1126, 13 P.3d at 949.  The defendant argued that the drugs were inadmissible as they were illegally obtained by the police because the police officers' actions in detaining the defendant and grabbing for his knife amounted to an illegal seizure.

The Supreme Court of Nevada found the defendant's initial detention by the police was unreasonable.  Lisenbee, 116 Nev. at 1129, 13 P.3d at 950.  However, the Lisenbee court went on to state that "flight after a seizure occurs is an effectual end to that seizure.  Thus, any conduct during flight should be considered apart from the illegal police action."  Lisenbee, 116 Nev. at 1130, 13 P.3d at 951.  As a result, the court found the drugs the defendant abandoned after he broke free and ran from the police officers were not obtained in violation of the fourth amendment.  Lisenbee, 116 Nev. at 1130, 13 P.3d at 951.  We agree with this reasoning and find the drugs in this case were admissible as evidence even assuming arguendo the initial seizure of defendant was unlawful.

Defendant argues we should not follow Lisenbee because it is based on reasoning that has been consistently rejected by Illinois courts and because it is based on a Nevada statute that is different from Illinois law.  All the Illinois cases defendant

cites in an attempt to show the reasoning in Lisenbee is not in accord with Illinois case law, as well as the majority of the other state and federal decisions cited, are distinguishable from the instant case because the defendants in those cases abandoned their drugs while they were seized by the police. See People v. Roebuck, 25 Ill. 2d 108, 110, 183 N.E.2d 166, 168 (1962) ("Immediately following the arrest, as one of the officers was attempting to search [the] defendant, the other officer saw [the] defendant throw an object into a parked car. The object was retrieved and was later identified as heroin"); People v. Wilson, 141 Ill. App. 3d 156, 158, 490 N.E.2d 701, 702 (1986) (First District, "the arresting officer testified that [the] defendant was stopped, and, as the officers exited their car with guns drawn, [the] defendant dropped the duffel bag he was carrying and raised his hands"); People v. Cox, 295 Ill. App. 3d 666, 673, 693 N.E.2d 483, 487 (1998) (Fourth District, "the manifest weight of the evidence established that [the] defendant was stopped, asked to place his hands on the squad car, warned he was going to be searched for the wallet, and then attempted to discard the cocaine"); United States v. Beck, 602 F.2d 726, 729-30 (5th Cir. 1979) (after the stop was made, and while the police officer was pulling his squad car in front of the vehicle the defendant was in, the police officer saw a marijuana cigarette thrown from the defendant's window); Commonwealth of Pennsylvania v. Jackson, 548

Pa. 484, 486, 698 A.2d 571, 572 (1997) (court answered in the negative "the question of whether an article abandoned by the appellant during the course of the stop and frisk may be admissible into evidence"); State v. Bennett, 430 A.2d 424, 426 (R.I. 1981) (the defendant dropped paper bag containing marijuana to the ground after police told him to stop because they wanted to talk to him); State v. Dineen, 296 N.W.2d 421, 422 (Minn. 1980) (the defendant fled from site of seizure but left drugs there at the site of the seizure).

In the case at bar, the drugs were not found by the police during the initial, arguably unlawful, seizure. They were found because defendant abandoned them after ending the initial seizure by escaping from the police officers. Defendant cites People v. Moore, 286 Ill. App. 3d 649, 676 N.E.2d 700 (1997) (Third District), for the proposition that he did not violate any law by escaping from the police officers. We find Moore inapplicable to this case. First, Moore does not stand for the proposition that a suspect who has been seized unlawfully by police officers can resist that seizure and escape from the police officers without violating any laws. Second, whether defendant violated any law by escaping from the police officer is irrelevant in this case. Rather, another fact is relevant: that he ended the seizure by escaping from the police officer before he abandoned the drugs in question.

- 9 -

Based on our analysis, we need not determine if the initial seizure in this case was lawful. While unnecessary to our decision in this case, we note that we agree with the Nevada Supreme Court's statement that public policy "supports courts of law determining the lawfulness of seizures or arrests," rather than suspected criminals on the street making those determinations. Lisenbee, 116 Nev. at 1130, 13 P.3d at 951. This policy benefits both the State and defendants. The State benefits by keeping police officers from having to engage in dangerous pursuits, and the defendants benefit because they can move to suppress evidence found during an illegal seizure. For example, in the instant case, if the police officers had found the drugs on defendant's person during the initial seizure and this court agreed that the initial seizure was unlawful, the drugs would have been inadmissible.

For the reasons stated, we affirm the trial court's judgment. As part of our judgment, we award the State its $75 statutory assessment as cost of this appeal.

Affirmed.

MYERSCOUGH and TURNER, JJ., concur.