# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Henderson*, 2012 IL App (1st) 101494

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL HENDERSON, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-10-1494 |
| Filed | February 15, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The firearm defendant dropped when he fled from the police after the car in which he was a passenger was stopped on the basis of information provided by an anonymous citizen was not the fruit of an illegal seizure, since defendant was not "seized" at the time the weapon fell to the ground and any motion to suppress that defendant's attorney could have filed on the ground that the weapon was obtained in violation of defendant's fourth amendment rights would have been futile; therefore, defendant's contention of ineffective assistance of counsel was rejected and his conviction for aggravated unlawful use of a weapon was upheld. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-17149; the Hon. Stanley Sacks, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Brian Koch, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Yvette Loizon, and Tobara S. Richardson, Assistant State's Attorneys, of counsel), for the People.

Panel

JUSTICE MURPHY delivered the judgment of the court, with opinion.
Presiding Justice Steele and Justice Salone concurred in the judgment and opinion.

## OPINION

¶ 1      After a bench trial, defendant Carl Henderson was found guilty of aggravated unlawful use of a weapon and sentenced to eight years in prison. On appeal, defendant contends that he was denied effective assistance of counsel because counsel did not file a motion to suppress when there was a lack of a reasonable suspicion for the initial stop of the car in which defendant was a passenger. We affirm.

¶ 2      At trial, Officer Robert Staken testified that on the afternoon of September 8, 2009, he was on patrol with his partner, Officer Brophy, when they spoke to an anonymous citizen. This citizen, an African-American man in his twenties, told them about a tan, four-door Lincoln with three passengers, which contained a gun. At trial, Staken indicated that he did not remember what the man was wearing, his height, or whether the man had facial hair.

¶ 3      Approximately five minutes later, the officers saw a four-door tan Lincoln with three passengers and curbed the vehicle. As the officers approached the vehicle, the driver got out and began walking toward them. This man was ordered back to the vehicle. There, the officers handcuffed the driver and a passenger. Staken then ordered defendant, who was sitting in the backseat, out of the car. Defendant exited from the driver's side of the vehicle, and, as he was being "passed" to Staken by Brophy, took off running. As defendant ran away, an object fell to the ground. Once the object was on the ground, Staken realized that it was a handgun.

¶ 4      Staken alerted Brophy that defendant had dropped a gun, then got into the squad car and chased defendant. Eventually, defendant fell to the ground. At that point, Staken exited the car and handcuffed defendant.

¶ 5      Officer Matthew Brophy testified consistently with Staken regarding the details of the conversation with the anonymous citizen. Although Brophy did not recall what the man was wearing, he did remember that the man was of average height. Brophy's testimony was also consistent with that of Staken regarding the stop of the Lincoln. After defendant exited the car from the driver's side, Brophy then handed defendant over to Staken and returned to the

-2-

other two men. At that point, defendant began to run away. Brophy later recovered a .22-caliber handgun from the ground approximately two feet away from the Lincoln.

¶ 6       Ultimately, the trial court found defendant guilty of aggravated unlawful use of a weapon and sentenced him to eight years in prison.

¶ 7       On appeal, defendant contends that counsel's failure to file a motion to suppress constituted ineffective assistance of counsel because the officers' initial seizure of the Lincoln was not based on either reasonable suspicion or probable cause. Consequently, he argues that the gun dropped during his subsequent flight must be suppressed as the fruit of an illegal search.

¶ 8       To show that counsel was ineffective, a defendant must demonstrate both that counsel's performance was deficient and that as a result he was prejudiced. *People v. Bailey*, 232 Ill. 2d 285, 289 (2009) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). In order to succeed on an ineffective assistance of counsel claim, a defendant must overcome the presumption that the challenged conduct might be considered sound trial strategy under the circumstances. *People v. Snowden*, 2011 IL App (1st) 092117, ¶ 70. The decision whether to file a motion to suppress is generally considered a matter of trial strategy that will typically not support a claim of ineffective assistance of counsel. *Snowden*, 2011 IL App (1st) 092117, ¶ 70. In order for a defendant to establish that he was prejudiced by counsel's failure to file a motion to suppress, he must show a reasonable probability that the motion would have been granted and that the outcome of the trial would have been different if the evidence at issue had been suppressed. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). An attorney's decision not to file a motion to suppress will not be grounds to find incompetent representation when the motion would have been futile. *Patterson*, 217 Ill. 2d at 438.

¶ 9       Here, defendant contends that his rights under the Illinois and United States Constitutions were violated when he was illegally seized, and, consequently, the gun dropped during his subsequent flight must be suppressed as the fruit of that illegal seizure. Under *People v. Rhinehart*, 2011 IL App (1st) 100683, ¶¶ 14-18, the initial seizure in this case was illegal because it was based on an anonymous tip that was not sufficiently reliable to provide the officers with a reasonable suspicion that defendant was engaged in criminal activity which would justify a stop under *Terry v. Ohio*, 392 U.S. 1 (1968). However, unlike the defendant in *Rhinehart*, who did not attempt to flee when approached by officers, here, defendant was seized, then broke away from the officers and ran before he was seized a second time. The State responds that regardless of the legality of the initial stop, defendant ended that stop when he ran away and he cannot now seek to exclude the gun because he was not in custody, *i.e.*, "seized" when he dropped it.

¶ 10      The fourth amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Similarly, article I, section 6, of the Illinois Constitution provides that the "people shall have the right to be secure in their persons, houses, papers and other possessions against unreasonable searches [and] seizures." Ill. Const. 1970, art. I, ¶ 6. Illinois courts interpret article I, section 6, in "limited lockstep" with the fourth amendment. *People v. Caballes*, 221 Ill. 2d 282, 313 (2006). Our supreme court has explained that the

limited lockstep approach is based upon the premise that the drafters of the 1970 constitution intended that the phrase "search and seizure" in the state constitution mean "in general, what the same phrase means in the federal constitution." *Caballes*, 221 Ill. 2d at 314. This approach, as adopted and modified by our supreme court, permits the consideration of state tradition and values "as reflected by long-standing case precedent." *Caballes*, 221 Ill. 2d at 314.

¶ 11    In the case at bar, although defendant argues that his position on appeal rests upon the protections offered by both the fourth amendment and the Illinois Constitution, defendant's only citation to authority is for the very general proposition that the Illinois Constitution of 1970 protects a person's right to be free from unreasonable searches and seizures. Defendant has failed to provide any citation to authority or argument as to how this court could interpret article I, section 6, in a manner contrary to the fourth amendment in this situation.

¶ 12    This court now turns to defendant's claim that the trial court should have suppressed the gun dropped as defendant ran away from the police. The issue is whether defendant, at the time that he dropped the gun, was "seized" within the meaning of the fourth amendment. For the reasons that follow, we answer that question in the negative, as defendant was not seized until he submitted to the officer's authority when he was handcuffed after falling.

¶ 13    In *California v. Hodari D.*, 499 U.S. 621 (1991), the United States Supreme Court considered whether a court should grant a defendant's motion to suppress evidence thrown away by the defendant immediately before he was arrested. In that case, two officers in an unmarked police car turned a corner and saw a group of youths, including the defendant, standing around a car. *Hodari D.*, 499 U.S. at 622. As the police approached, the young men ran away and the officers gave chase. *Hodari D.*, 499 U.S. at 622-23. An officer chased the defendant on foot. *Hodari D.*, 499 U.S. at 623. When the officer was "almost upon" the defendant, the defendant tossed away what appeared to be a small rock, but was later determined to be crack cocaine. *Hodari D.*, 499 U.S. at 623. The officer then tackled the defendant, handcuffed him, and radioed for assistance. *Hodari D.*, 499 U.S. at 623.

¶ 14    In the juvenile proceedings against him, the defendant sought to have the cocaine suppressed. *Hodari D.*, 499 U.S. at 623. After the motion was denied by the trial court, the defendant was granted relief by the California Court of Appeals, which found that the defendant had been seized when he saw the officer running toward him, that the seizure was unreasonable under the fourth amendment, and that the cocaine had to be suppressed as the fruit of that illegal seizure. *Hodari D.*, 499 U.S. at 623.

¶ 15    Before the Supreme Court, the issue was whether, at the time that he dropped the cocaine, the defendant had been "seized" within the meaning of the fourth amendment. *Hodari D.*, 499 U.S. at 623. The Supreme Court determined that the defendant had not been seized at the time that he dropped the cocaine because at that time he was not within the physical control of a police officer. See *Hodari D.*, 499 U.S. at 624-26 (from "the founding to the present, the word 'seizure' has meant a 'taking possession' [citations]"). "To say that an arrest is effected by the slightest application of physical force, despite the arrestee's escape is not to say that for Fourth Amendment purposes there is a *continuing* arrest during the period of fugitivity." (Emphasis in original.) *Hodari D.*, 499 U.S. at 625. Classifying a

seizure as a single act, the Court determined that if the officer had laid hands upon the defendant to arrest him, but the defendant had broken away and then thrown away the cocaine, "it would hardly be realistic to say that [the] disclosure had been made during the course of an arrest." *Hodari D.*, 499 U.S. at 625. The Court then noted that in that case the defendant was untouched by the officer at the time that he threw away the cocaine; in other words, no physical force had been applied to the defendant at that point. *Hodari D.*, 499 U.S. at 625.

¶ 16    The Court then considered "whether, with respect to a show of authority as with respect to the application of physical force, a seizure occurs even though the subject does not yield" and determined that it did not. *Hodari D.*, 499 U.S. at 626. When, for example, an officer yells "stop" at a fleeing defendant who continues to flee, that is not a seizure. *Hodari D.*, 499 U.S. at 626. Ultimately, an arrest requires either physical force or submission to the assertion of authority. *Hodari D.*, 499 U.S. at 626.

¶ 17    The Court determined that this conclusion was consistent with public policy, as street pursuits place the general public at risk and compliance with a police officer's order to stop must be encouraged. *Hodari D.*, 499 U.S. at 627. As only a "few" of these orders would be without basis, "the responsible course [was] to comply" rather than try to determine which were deficient. *Hodari D.*, 499 U.S. at 627. The Court finally noted that unlawful orders would not be deterred by sanctioning through the exclusionary rule those orders that are not obeyed; rather, it is sufficient to apply the exclusionary rule to "successful seizures." *Hodari D.*, 499 U.S. at 627.

¶ 18    Ultimately, assuming that the officer's pursuit of the defendant in that case was a show of authority telling the defendant to stop, because the defendant did not stop he was not seized within the meaning of the fourth amendment until he was tackled. *Hodari D.*, 499 U.S. at 629. Consequently, the cocaine abandoned while the defendant was fleeing was not the fruit of a seizure, and the defendant's motion to exclude the cocaine was properly denied. *Hodari D.*, 499 U.S. at 629; see also *People v. Ramirez*, 244 Ill. App. 3d 136, 145 (1993) (relying on *Hodari D.* to determine that defendant was not seized when he ignored police officers' instructions to stop, dropped the paper bag he was carrying, and ran 25 feet before he was apprehended because the defendant chose to ignore the officers' commands to stop and he had not yet been touched by the officers when he abandoned the package).

¶ 19    Although some states have rejected the analysis of *Hodari D.* on state constitutional grounds, others have followed the majority's analysis. See *State v. Randolph*, 74 S.W.3d 330, 335 nn.2, 3 (Tenn. 2002) (discussing which states have expressly adopted *Hodari D.*, and which have rejected it on state constitutional law grounds). In *People v. Thomas*, 198 Ill. 2d 103 (2001), our supreme court relied on the reasoning of *Hodari D.*, to find that a person is "seized" within the meaning of the fourth amendment when, in view of the surrounding circumstances, a reasonable person would believe he was not free to leave, and that person submits to a police order. See *Thomas*, 198 Ill. 2d at 111(citing *California v. Hodari D.*, 499 U.S. 621, 628 (1991)).

¶ 20    In that case, a police officer attempted to conduct a field interview by placing his car across the defendant's path. However, the defendant turned down an alleyway and drove his

bicycle away at an accelerated rate. Another officer pursued the defendant, pulled alongside him, and instructed him to stop. Ultimately, the defendant abandoned his bicycle and began to run. The chase continued on foot and the defendant was eventually taken into custody for obstructing a police officer. A pat-down search of the defendant was then conducted and suspected crack cocaine was recovered. After the defendant was indicted for one count of the possession of a controlled substance with the intent to deliver, he moved to suppress the cocaine. Although the trial court granted the motion, the appellate court reversed that determination.

¶ 21    Our supreme court first determined that the officer wished to detain the defendant "based on a suspicion grounded in circumstances that fell short of warranting a stop," and the officer's actions constituted a show of authority. *Thomas*, 198 Ill. 2d at 110. Thus, the issue before the court was at what point in time the defendant was actually seized within the meaning of the fourth amendment as absent a seizure the fourth amendment was not implicated. *Thomas*, 198 Ill. 2d at 110-11.

¶ 22    The court determined that the defendant was not seized within the meaning of the fourth amendment by the attempted roadblock because the defendant chose to run rather than stop. *Thomas*, 198 Ill. 2d at 112. The defendant was seized only when physical force was applied after he was caught. *Thomas*, 198 Ill. 2d at 112. Although officers " 'may well convey a reasonable feeling of restraint, *** that message does not amount to a seizure within the meaning of the fourth amendment until there is submission to it. A person must submit to a show of authority before that show of authority can constitute a seizure.' " (Emphasis omitted.) *Thomas*, 198 Ill. 2d at 112 (quoting *People v. Thomas*, 315 Ill. App. 3d 849, 857 (2000), and citing *Hodari D.*, 499 U.S. at 629). The court noted that had the defendant stopped when the officer blocked his path and submitted to the officer's show of authority, " 'a seizure *** offensive to our constitution would have occurred,' " that is, an unreasonable seizure of the defendant's person because the stop was made without the requisite degree of suspicion to support it. *Thomas*, 198 Ill. 2d at 112 (quoting *Thomas*, 315 Ill. App. 3d at 857). However, the officer's attempt to make an unlawful stop did not implicate the fourth amendment because the defendant prevented the stop by running away. *Thomas*, 198 Ill. 2d at 112. The court agreed with the appellate court's determination that the defendant's ultimate stop and detention was not an unreasonable seizure because the defendant's flight turned the officer's ungrounded suspicion into a suspicion that justified the defendant's detention. *Thomas*, 198 Ill. 2d at 112-13 (citing *Illinois v Wardlow*, 528 U.S. 119, 124-25 (2000) (unprovoked flight when faced with a potential encounter with the police may raise enough suspicion to justify the ensuing pursuit and investigatory stop)).

¶ 23    In the case at bar, defendant was not seized, within the meaning of the fourth amendment, at the time that the gun fell to the ground because he chose not to submit to the officers' show of authority, *i.e.*, he chose to run away and the gun fell to the ground after he had broken away and begun to run.

¶ 24    *People v. Keys*, 375 Ill. App. 3d 459 (2007), a factually similar case, is instructive. In that case, the defendant was a passenger in a vehicle driven by a man known by police as a drug user. Officers followed the car and, ultimately, the defendant and the other passengers voluntarily exited the vehicle. After determining the defendant's name and that he did not

-6-

have any outstanding warrants, an officer attempted to conduct a pat-down search of the defendant. Although the defendant began to comply, he then broke free and ran away. The officer lost sight of the defendant for a few seconds before ultimately taking him into custody. When the officer later went to the area where he had lost sight of the defendant, he recovered three bags containing heroin. The trial court subsequently denied the defendant's motion to suppress these narcotics. On appeal, the defendant argued that the motion to suppress should have been granted because he was unlawfully seized and searched by the police.

¶ 25     The appellate court focused its analysis on whether the defendant was seized, within the meaning of the fourth amendment, at the time that he dropped the items sought to be suppressed. The court highlighted the Supreme Court's discussion in *California v. Hodari D.*, 499 U.S. 621, 625 (1991), of the status of contraband that is discarded after a defendant has broken away from a police officer's hold. See *Keys*, 375 Ill. App. 3d at 462 (if the officer had laid hands upon the defendant, but the defendant had then broken away and thereafter cast away the contraband, " 'it would hardly be realistic to say that [the] disclosure had been made during the course of an arrest' " (quoting *Hodari D.*, 499 U.S. at 625)). The court then applied the Supreme Court's reasoning to the facts of that case, finding it "unrealistic" to say that the defendant had abandoned the drugs at issue during his seizure. *Keys*, 375 Ill. App. 3d at 462. There, the drugs the defendant sought to suppress were not discovered by the police during the initial seizure; rather, they were found because the defendant abandoned them after he ended the initial seizure by running away from the police. *Keys*, 375 Ill. App. 3d at 464.

¶ 26     Consequently, because the defendant ended the initial seizure by running away before abandoning the drugs it was unnecessary for the court to determine whether the initial seizure was in fact lawful, and the trial court properly denied the defendant's motion to suppress because the defendant was not seized within the meaning of the fourth amendment at the time that he abandoned the drugs. *Keys*, 375 Ill. App. 3d at 464. See also *People v. Morris*, 209 Ill. 2d 137, 155-56 (2004), *overruled in part by People v. Pitman*, 211 Ill. 2d 502, 513 (2004) (relying on *Hodari D.*, to determine that because the defendant did not submit to the officers' show of authority and requests to halt, he was not seized until an officer pulled the defendant from a pile of debris and placed the defendant in handcuffs, and because this seizure occurred after the defendant had abandoned certain contraband along the chase route, that contraband could not have been the fruit of an illegal arrest).

¶ 27     Similarly, here, the gun defendant seeks to suppress was not discovered by the police during the initial seizure of the Lincoln; rather, it was discovered after it fell as defendant was fleeing. *Keys*, 375 Ill. App. 3d at 464. In other words, defendant was not seized within the meaning of the fourth amendment at the time that the gun fell to the ground. *Keys*, 375 Ill. App. 3d at 464; *Hodari D.*, 499 U.S. at 624-26. Defendant was not seized, within the meaning of the fourth amendment, until he was later handcuffed by a police officer. As in *Hodari*, the contraband was not recovered while defendant was seized because it was cast away after defendant broke away from the officers and began to run. See *Hodari*, 499 U.S. at 625 (if the officer had laid hands upon the defendant to arrest him, but the defendant had broken away and then cast away the contraband, it would not be "realistic" to say that the

disclosure had been made during the course of an arrest, as a seizure is an act rather than a continuous fact). Thus, the gun cannot be the fruit of an illegal seizure and the trial court properly denied defendant's motion to suppress.

¶ 28 Here, as defendant was not "seized" at the time that the gun fell to the ground the filing of a motion to suppress would have been futile. *Patterson*, 217 Ill. 2d at 438. Because any motion to suppress the gun on the grounds that it was obtained in violation of the fourth amendment would have failed, defendant's counsel's decision not to file such a motion on constitutional grounds was not deficient (*Patterson*, 217 Ill. 2d at 438), and defendant's claim of ineffective assistance of counsel must fail. See *People v. Edwards*, 195 Ill. 2d 142, 163 (2001) (failure to satisfy either prong of the *Strickland* test defeats a claim of ineffective assistance).

¶ 29 Defendant acknowledges the holding of *Keys*, but urges this court not to follow it, as the decision is nonbinding authority from a different appellate district. See *People v. Caban*, 318 Ill. App. 3d 1082, 1086 (2001). While it is certainly true that the opinion of one district or panel of the appellate court is not binding on other districts or panels (*O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008)), this court may follow the reasoning of a decision in another district when, as in the instant case, the facts are similar and the court's reasoning is persuasive.

¶ 30 For the reasons stated above, we affirm the judgment of the circuit court of Cook County.


¶ 31 Affirmed.